UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
CIT BANK, N.A., formerly known as ONEWEST BANK,
N.A.,

                    Plaintiff,

       -against-

JOHN O'SULLIVAN A/K/A JOHN OSULLIVAN,
FILOMENA O'SULLIVAN A/K/A FILOMENA OSULLIVAN,
CITIBANK NA, JOHN DOE (being fictitious and unknown
to Plaintiff, intended to be tenants, occupants, persons,
or corporations having or claiming an interest in or lien
encumbering the property described in the Complaint
or their heirs at law, distributes, executors,
administrators, trustees, guardians, assignees,
creditors, or successors.)

                    Defendants.
------------------------------------------------------------------------------x

**FILED**
**CLERK**

5/10/2016 3:55 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF**
**DECISION AND ORDER**
14-cv-5966 (ADS)(AYS)

**APPEARANCES:**

**Gross Polowy, LLC**
*Attorneys for the Plaintiff*
900 Merchants Concourse, Suite 412
Westbury, NY 11590
      By:    Michael W. Nardolillo, Esq.
              John J. Ricciardi, Esq., Of Counsel

**Lieb at Law, P.C.**
*Attorneys for the Defendants John O'Sullivan a/k/a John OSullivan*
*   and Filomena O'Sullivan a/k/a Filomena OSullivan*
376a Main Street
Center Moriches, NY 11934
      By:    Dennis C. Valet, Esq.
              Jeffrey M. Marchese, Esq., Of Counsel

**NO APPEARANCE:**

**Citibank, N.A.**
*Defendant*

1

**SPATT, District Judge:**

On October 13, 2014, the Plaintiff CIT Bank, N.A. (the "Plaintiff" or "Bank") commenced this diversity mortgage foreclosure action under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), seeking to foreclosure its security interest in a parcel of real property owned by the Defendants John O'Sullivan a/k/a John OSullivan ("John") and Filomena O'Sullivan a/k/a Filomena OSullivan ("Filomena", together with John, the "Homeowners"), located at 40 West Windsor Parkway in Oceanside (the "Oceanside Residence").

On November 7, 2014, the Homeowners filed an answer, substantially denying the allegations in the complaint and asserting numerous affirmative defenses. Relevant here: (1) the First Affirmative Defense alleged that the Bank lacks standing to maintain this action; and (2) the Third Affirmative Defense alleged that the Bank failed to comply with RPAPL § 1304, which regulates the form and manner of notice that a lender must provide to a defaulting borrower prior to commencing a foreclosure action. The Homeowners also asserted a counterclaim for their costs and attorneys' fees under New York Real Property Law ("RPL") § 282.

Further, in addition to the Homeowners, the Plaintiff named Citibank, N.A. ("Citibank") as a Defendant in this action, alleging that Citibank is the holder of a junior secured lien against the Oceanside Residence, which the Bank seeks to extinguish and thereby quiet title to the property. To date, Citibank has not filed an answer or otherwise appeared in this action. On February 12, 2015, the Clerk of the Court noted Citibank's default.

Presently before the Court are four separate motions:

(1) The Bank and the Homeowners cross-move for summary judgment under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56;

(2) The Bank moves under Fed. R. Civ. P. 55 for a default judgment against Citibank; and

(3) The Homeowners move under New York Civil Practice Law and Rules ("CPLR") § 3408 for an award of sanctions against the Bank based on its alleged failure to negotiate a loan modification in good faith.

For the reasons that follow, the Court grants the Bank's motion for summary judgment, dismissing with prejudice the Homeowners' affirmative defenses and counterclaim; grants the Bank's motion for a default judgment against Citibank; denies the Homeowners' cross-motion for summary judgment in all respects; and denies the Homeowners' motion for sanctions against the Bank.

## I. Background

Except as otherwise noted, the following facts are drawn from the parties' joint statement of undisputed facts pursuant to Local Civil Rule 56.1 ("56.1 Stmt."), DE [29-1], and are not in dispute.

### A. The Note and Mortgage

On or about August 3, 2007, the Homeowners obtained a loan from non-party IndyMac Bank, F.S.B. ("IndyMac") in the principal sum of $643,500. The Homeowners executed a promissory note (the "Note") in favor of IndyMac in the same amount. See 56.1 Stmt. ¶ 1. The Note was secured by a mortgage (the "Mortgage") on the Oceanside Residence. See id. ¶ 2. Copies of the Note and Mortgage are annexed to the complaint. See Compl., Ex. "7."

On or about September 26, 2009, IndyMac assigned the Note and Mortgage to the Plaintiff. Copies of the relevant assignment documents are in the record as Exhibit "C" to the supporting affidavit of Caryn Edwards, an authorized signatory of the Bank. See Dec. 19, 2004 Affidavit of Caryn Edwards ("Edwards Aff."), DE [21], at ¶ 6 & Ex. "C." The assignment was duly recorded in the Nassau County Clerk's Office on or about March 8, 2010. See 56.1 Stmt. ¶ 4. An endorsement to the original Note is also annexed to the complaint, and indicates that the Plaintiff has been substituted for IndyMac as the payee on the Homeowners' loan. See Compl. Ex. "7."

**B.      The Default**

On or about May 1, 2009, the Homeowners defaulted under the Note and Mortgage by failing to make the required monthly payments. See Edwards Aff. ¶ 8.

On or about April 8, 2014, approximately five years after their initial default, the Bank sent individual notices to the Homeowners, pursuant to RPAPL § 1304, advising them that their home loan was 1,804 days in default, and if the matter was not resolved within 90 days, the Bank may commence a legal action against them (the "90-Day Notices"). These notices, copies of which are in the current record, were sent by certified mail to the Oceanside Residence. See Edwards Aff. ¶ 10 & Ex "E."

In an opposing affidavit, John states that he was never "served" with the 90-Day Notice. See July 31, 2015 Affidavit of John O'Sullivan ("O'Sullivan Aff."), DE [23], at ¶ 3. However, neither he nor Filomena deny actually receiving these notices in the mail, and the Bank submitted documentary evidence in the form of United States Postal Service records establishing that they were duly delivered to the Oceanside Residence on April 12, 2014. See Ex. "C" & "D" to the Pl. Reply Memo of Law, DE [38-3, 4].

On April 8, 2014, the Bank also sent notices of default (the "Default Notices") to the Homeowners.  <u>See</u> Edwards Aff. ¶ 9.  Again, John denies that he was "served" with the Default Notice.  <u>See</u> O'Sullivan Aff. ¶ 4.  However, again, the Homeowners do not deny actually receiving these mailings, and the documentary evidence establishes that the notices were sent by certified mail to the Oceanside Residence and duly delivered on April 12, 2014.  <u>See</u> <u>id.</u>, Ex. "A", "B" & "D" to the Pl. Reply Memo of Law, DE [38-1, 2].

On April 11, 2014, the Bank filed the 90-Day Notice with the New York State Department of Financial Services.  <u>See</u> Edwards Aff. ¶ 11 & Ex. "F."

**C.      Additional Relevant Facts**

In his supporting affidavit, John sets forth various assertions apparently relating to a prior attempt by the Homeowners to modify the terms of their loan.  <u>See</u> O'Sullivan Aff. ¶ 5 (stating that he has "been trying to modify the [home loan] with the Plaintiff since 2008").

In particular, John states that, on an unspecified date, he and Filomena "entered into a trial modification previously with the Plaintiff."  <u>Id.</u> ¶ 6.  In this regard, the Bank submits a document titled Home Affordable Modification Program [HAMP] Trial Period Plan, which is signed by the Homeowners and dated September 21, 2010.  <u>See</u> Jan. 21, 2016 Reply Aff. of Caryn Edwards, DE [38-5], at Ex. "E."

John further states that "[d]uring that trial modification period, [he] was incorrectly advised by a 'Donna' (last name unknown) from Indymac [*sic*] that [he] had been denied a modification" and that he should "not make the third and final payment of that trial modification period."  O'Sulivan Aff. ¶¶ 7-8.  Apparently based on this advice, the Homeowners did not make the third and final payment on their trial modification, and as a result, "[n]ow, Indymac [*sic*] has advised [him] that [he] cannot be offered a [permanent]

HAMP modification for the [loan] because a previous trial modification was offered but not completed, through no fault of [his] own." Id. ¶ 10. Consistent with this assertion, the Homeowners submitted a May 21, 2010 letter from IndyMac Mortgage Services, advising them that it was "unable to offer [them] a Home Affordable Modification because [they] did not make all of the required Trial Period Plan payments by the end of the trial period." See Exhibit "3" to the Homeowners' Memo of Law, DE [37-6].

The Homeowners also submitted a notice from IndyMac Mortgage Services, dated May 18, 2015, which apparently advised the Homeowners that they were ineligible for a loan modification because they "previously started, but ha[d] not completed, a HAMP trial modification." See Jan. 8, 2016 Affidavit of Jeffrey M. Marchese, Esq., DE [37-9], at Ex. "6." This notice also indicates that the Homeowners' loan had been reviewed for, and denied a modification on September 25, 2013, and again at or around the time of the notice, namely, May 18, 2015. Id. (indicating that IndyMac had "reviewed [the Homeowners'] loan for another modification" but was unable to offer one "because after previously being denied a Home Affordable Modification on 9/25/13 [their financial] circumstances ha[d] not changed"). Further, the notice advises the Homeowners that they were not eligible for a so-called "in-house" modification because the loan was more than twelve months in arrears. See id. There is no evidence that the Homeowners timely pursued an in-house modification within twelve months after their default.

As noted, the Homeowners do not deny that they failed to successfully complete the trial modification in or about September 2010, but claim that they were induced to withhold the final payment by "Donna." In this regard, John asserted that, despite his

repeated demands, the Plaintiff has not provided him with an audio recording of his conversation with Donna. <u>See</u> O'Sulivan Aff. ¶ 9.

**D.    Relevant Procedural History**

On October 13, 2014, the Bank commenced this action seeking to foreclose the Mortgage; sell the Oceanside Residence to satisfy the balance due on the Note; and recover a monetary judgment representing any deficiency. The Homeowners do not dispute that they were properly served with the summons and complaint on October 20, 2014. <u>See</u> 56.1 Stmt. ¶ 12.

On March 9, 2015, United States Magistrate Judge Steven I. Locke conducted an initial conference, which was adjourned to allow the parties an opportunity to negotiate a loan modification. <u>See</u> <u>id.</u> ¶ 18.

On March 14, 2015, the case was reassigned to United States Magistrate Judge Anne Y. Shields. On June 8, 2015, Judge Shields conducted a second conference, during which the parties advised the court that they had been unable to successfully negotiate a modification. <u>See</u> <u>id.</u> ¶ 19. However, the parties were granted additional time to discuss the viability of alternative resolutions, including a "short sale or deed in lieu of foreclosure." <u>Id.</u>

On July 9, 2015, the parties again appeared before Judge Shields and reported that they had been unable to reach any agreement. <u>See</u> <u>id.</u> ¶ 20. The present dispositive motion practice ensued.

## II.    Discussion

### A.    The Cross-Motions for Summary Judgment

As noted above, the Bank and the Homeowners cross-move for summary judgment under Fed. R. Civ. P. 56.

#### 1.    The Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.'" Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 137 (2d Cir. 1998) (quoting Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26 (2d Cir. 1998)).

"Where, as here, cross-motions for summary judgment have been filed, the Court must consider each motion independently, and must apply the same standards, drawing all reasonable inferences 'against the party whose motion is under consideration.'" Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd., No. 11-cv-726, 2013 U.S. Dist. LEXIS 109298, at *57 (E.D.N.Y. Aug. 2, 2013) (quoting Town of Southold v. Town of E. Hampton, 477 F.3d 38, 46 (2d Cir. 2007)).

"'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

### 2. The Relevant Burdens of Proof

" 'In a New York mortgage foreclosure action, a plaintiff makes a prima facie case – with summary judgment appropriate if nothing else is shown – where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor.' " Wells Fargo Bank, N.A. v. Ullah, No. 13-cv-485, 2015 U.S. Dist. LEXIS 77175, at *10 (S.D.N.Y. June 15, 2015) (quoting E. Sav. Bank, FSB v. Bright, No. 11-cv-1721, 2012 U.S. Dist. LEXIS 93082, at *7-*8 (E.D.N.Y. July 5, 2012)); see E. Sav. Bank, FSB v. Ferro. No. 13-cv-5882, 2015 U.S. Dist. LEXIS 22021, at *19 (E.D.N.Y. Feb. 24, 2015) (same).

If "a plaintiff meets its prima facie burden and the defendant does not contest those facts, a presumptive right to collect the overdue amount exists that can only be overcome by showing a meritorious affirmative defense." Bright, 2012 U.S. Dist. LEXIS 93082, at *8; see 1077 Madison St., LLC v. Smith, No. 13-cv-7182, 2015 U.S. Dist. LEXIS 135025, at *13 (E.D.N.Y. Aug. 27, 2015) (Report and Recommendation) (same), adopted, 2015 U.S. Dist. LEXIS 134173 (E.D.N.Y. Sept. 30, 2015).  In that regard, the burden shifts to the homeowner to produce admissible evidence of such an affirmative defense.  See Bright, 2012 U.S. Dist. LEXIS 93082, at *8 (citing Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs., 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001)).

### 3. Application to the Facts of this Case

#### a. As to the Bank's Initial Burden to Establish a Prima Facie Case

In this case, the Court finds that the Bank has sustained its initial burden of producing documentary evidence sufficient to establish a prima facie foreclosure claim.

As noted above, the Bank submitted valid copies of the Note and Mortgage, both signed by the Homeowners. The Plaintiff also submitted an affidavit by Caryn Edwards, an authorized signatory of the Bank, who stated that, based on her review of the relevant books and records maintained by the Bank pertaining to the Homeowners' account, she has personal knowledge of the Note and Mortgage at issue in this case. Edwards stated that the Homeowners defaulted on their obligations under the Note and Mortgage by failing to make the required monthly payments after May 1, 2009. The Homeowners do not dispute this fact, but the Bank nonetheless submitted copies of the 90-Day Notices and the Default Notices that it sent to the Homeowners on April 8, 2014, notifying them that they were in default under the Note and Mortgage and at risk of losing their home, together with proof of mailing and successful delivery.

This evidence is uncontroverted. In fact, the Homeowners do not challenge the merits of the Bank's motion – in particular, they do not materially deny that they signed the Note and Mortgage, or that those instruments are valid and binding against them; that the Bank is the lawful holder of these instruments and therefore entitled to enforce them; or that they, the Homeowners, defaulted by failing to make the required monthly payments.

Rather, in the absence of any proof to overcome the Plaintiff's prima facie case, the Homeowners' opposition consists entirely of evidentiary challenges directed at the materials submitted in support of the Bank's motion, few of which relate to the accuracy, authenticity, or reliability of the relevant documentary evidence. As discussed more fully below, the Court finds that each of the Homeowners' challenges is without merit and is insufficient to create a triable issue of fact sufficient to defeat summary judgment.

For example, the Homeowners contend that the Bank failed to sufficiently establish its standing to maintain this action because the affidavit of Caryn Edwards states only that the Bank "was the holder of the Note and Mortgage," not that the Bank "was the holder of the *original* Note and Mortgage." The Homeowners argue incredulously that Edwards' omission of the word "original" raises a material question as to whether the Bank is actually in possession of the operative mortgage documents. In the Court's view, this argument is bordering on frivolous.

The uncontroverted evidence establishes that the Mortgage was validly assigned by IndyMac to the Plaintiff prior to the commencement of this foreclosure action, and that the assignment was duly recorded in the Nassau County Clerk's Office. The relevant assignment documents, as well as an endorsement substituting the Bank as the payee on the underlying Note, are in the record. Further, Edwards states unequivocally in her affidavit that, based on her inspection of the relevant business records maintained by the Bank pertaining to the Homeowners' account, the Plaintiff is the holder of the Note.

The Homeowners also argue that the photocopies of the Note and Mortgage submitted in the present motion record are insufficient to establish that the Bank is actually in possession of the original documents. However, this contention was flatly rejected by the New York Court of Appeals in a case that the Homeowners cite as authoritative elsewhere in their brief. See Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d 355, 362 (2015) ("Although the Taylors assert that the best evidence rule should require production of the original [promissory note], they fail to cite any authority holding that such is required in this context").

The Homeowners further contend that the Bank failed to establish its compliance with RPAPL § 1304, which requires lenders to provide defaulting borrowers with 90 days' notice before seeking to foreclose. In this regard, the Homeowners do not substantively challenge the sufficiency of the 90-Day Notices that the Bank sent to them. Nor do they deny that the notices were timely mailed, delivered, and received by them. Rather, the Homeowners argue that the notices are technically deficient because they are unsigned. However, the Court identifies no language in the text of § 1304 that requires a valid 90-Day Notice be physically signed, and the Homeowners identify no other legal authority to support their position.

They also argue that the Bank failed to establish that the notices were validly mailed because the record contains neither an affidavit of service nor proof of the office procedures used by the Bank to ensure proper mailings. This argument is unavailing.

The Court discerns no logical basis for requiring such proof in light of the uncontroverted United States Postal Service records, which demonstrate that the notices were, in fact, successfully mailed and delivered to the Oceanside Residence. Nor is an affidavit of service necessary given the Homeowners' tacit admission that they actually received them. See Loc. Civ. R. 56.1(c) (facts not specifically controverted are deemed admitted).

In this regard, the carefully crafted affidavit of John, which states, without citation to facts or law, that he was not "served" with the 90-Day Notice is insufficient to raise a triable issue of material fact to defeat summary judgment. The plain language of the statute requires only that such notice "be sent . . . to the borrower, by registered mail and also by

first-class mail to last known address of the borrower."   RPAPL ¶ 1304(2).   The Homeowners' contention that the Bank was under any greater obligation is without merit.

The Homeowners further contend that the Court should strike the affidavit of Caryn Edwards in its entirety because it fails to specifically identify what materials she reviewed in acquiring personal knowledge of the relevant facts.   In this regard, the Homeowners argue that the "best evidence rule" codified in Federal Rule of Evidence ("Fed. R. Evid.") 1002 requires that, in order for her affidavit to be admissible, Edwards must either produce all of the original business records that form the basis of her personal knowledge, or provide an excuse as to why those records could not be produced.   This argument is patently without merit.

The "best evidence rule" holds that "[a]n original writing, recording or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."   Fed. R. Evid. 1002.   It is clear that Edwards' reference to the Bank's business records was made simply to indicate the general method by which she gained personal knowledge of the relevant facts, not to prove their contents.   Thus, in the Court's view, Fed. R. Evid. 1002 has no application here, and the Court can identify no other rational basis for requiring Edwards to specify or produce the original contents of the Bank's underlying case file.

As to the documents whose contents Edwards *does* seek to prove – for example, the Note, Mortgage, assignment, 90-Day Notices, and Default Notices – photocopies of those documents are either annexed to her sworn affidavit or the Bank's complaint.   Under Fed. R. Evid. 1003, such "duplicate[s] [are] admissible to the same extent as the original[s] unless a genuine question is raised about the original[s'] authenticity or the circumstances

make it fair to admit the duplicate[s]."  In this case, the Homeowners have not raised any genuine issue about the original authenticity of any of the underlying documents sufficient to justify disregarding relevant photocopies.  Further, in the Court's view, the Homeowners' failure to substantially rebut any of the determinative facts in this case "make[s] it fair" to admit the duplicates as proof of those facts.

Finally, the Homeowners argue that the Bank was required to submit proof that Edwards is, in actuality, an authorized signatory of the Bank.  In particular, the Homeowners insist that the Bank provide an executed power of attorney in favor of Edwards before her affidavit can be accepted.  Again, the Court finds this argument to be bordering on frivolous.

Initially, the Court seriously doubts the accuracy of the Homeowners' position that in order for an agent to have signatory authority, she must also be designated as an attorney-in-fact for her principal.  The Homeowners cite to no authority for such a rule.

In any event, this argument has no relevance to the present dispute because Edwards did not sign the underlying Note or Mortgage on behalf of the Bank.  Nor has it been alleged that, by her signature, she has bound the Bank to any instrument or obligation in this case.  Therefore, whether she is actually authorized as a signatory on behalf of the Bank is of no moment.

Rather, the Homeowners are apparently arguing that Edwards may not submit an affidavit as a fact witness in support of the Bank's motion without first being designated as the Bank's attorney-in-fact.  In the Court's view, this contention is clearly erroneous, and the only case cited by the Homeowners, namely, Yukos Capital S.A.R.L. v. Samaraneftagaz,

No. 10-cv-6147, 2012 U.S. Dist. LEXIS 104702 (S.D.N.Y. July 24, 2012), does not suggest otherwise.

Contrary to the Homeowners' contention, the relevant caselaw makes abundantly clear that lenders routinely rely on factual affidavits by their employees, whose sworn statements, usually based on an examination of the institution's business records, serve to authenticate those documents; place them before the court in connection with the motion; and often set forth additional relevant facts.  See, e.g., Ferro, 2015 U.S. Dist. LEXIS 22021, at *19-*20; E. Sav. Bank, FSB v. Beach, No. 13-cv-341, 2014 U.S. Dist. LEXIS 31700 (E.D.N.Y. Feb. 12, 2014) (Report and Recommendation), adopted, 2014 U.S. Dist. LEXIS 31523 (E.D.N.Y. Mar. 10, 2014); E. Sav. Bank, FSB v. Rabito, No. 1-cv-2501, 2012 U.S. Dist. LEXIS 115869 (E.D.N.Y. Aug. 16, 2012) (same).

In fact, courts in this district have previously relied upon sworn statements by Caryn Edwards, made in her capacity as an authorized signatory on behalf of the Bank, to grant foreclosure relief.  See OneWest Bank, N.A. v. Denham, No. 14-cv-5529, 2015 U.S. Dist. LEXIS 126048 (E.D.N.Y. Aug. 31, 2015) (Report and Recommendation), adopted, 2015 U.S. Dist. LEXIS 125912 (E.D.N.Y. Sept. 21, 2015); OneWest Bank, N.A. v. Hawkins, No. 14-cv-4656, 2015 U.S. Dist. LEXIS 131774 (E.D.N.Y. Sept. 2, 2015) (Report and Recommendation), adopted, 2015 U.S. Dist. LEXIS 130130 (E.D.N.Y. Sept. 25, 2015).

In this case, the Homeowners have failed to provide any rational basis for doubting Edwards' signatory authority, or to otherwise call her credibility as a witness into question. Therefore, in the Court's view, the absence of a power of attorney cannot provide a basis for defeating summary judgment.

Accordingly, in the Court's view, the Bank has sustained its burden of establishing, by competent documentary evidence, a prima facie foreclosure claim and presumptive entitlement to collect the overdue amount.

### b.    As to the Homeowners' Burden to Establish a Meritorious Affirmative Defense

As noted above, the burden now shifts to the Homeowners to proffer sufficient admissible evidence of a meritorious affirmative defense to overcome the Bank's entitlement to summary judgment.  In that regard, the Homeowners again rely on:  (1) the First Affirmative Defense based on the Bank's alleged lack of standing to maintain this action; and (2) the Third Affirmative Defense based on the Bank's alleged failure to comply with the notice requirement in RPAPL § 1304.  However, as discussed above, the Court has considered these defenses and finds them to be unsupported by admissible evidence and otherwise without merit.

Further, although the Homeowners asserted a counterclaim in their answer to recover costs and attorneys' fees under RPL § 282, they have not advanced any substantive argument in support of that counterclaim, or otherwise demonstrated that it can survive summary judgment.

Accordingly, in the Court's view, the Homeowners have failed to raise a genuine issue of material fact sufficient to overcome the Plaintiff's prima facie claim for foreclosure. The Bank's motion for summary judgment therefore is granted in its entirety, and the Court dismisses with prejudice the affirmative defenses and counterclaim of the Homeowners.

### c.    As to the Homeowners' Cross-Motion for Summary Judgment

In addition to raising the First and Third Affirmative Defenses as grounds for denying the Bank's dispositive motion, the Homeowners also assert that those defenses are

sufficient, as a matter of law, to warrant dismissal of the complaint against them. However, for substantially the same reasons as outlined above, the Court finds the Homeowners' contentions regarding the Bank's standing and its noncompliance with RPAPL § 1304 to be without merit. As noted above, there is no apparent legal basis for the Homeowners' positions in this regard, and in the Court's view, the cross-motion is unsupported by any competent evidence.

Accordingly, the Court finds that the Homeowners have failed to proffer sufficient admissible evidence to warrant judgment in their favor, as a matter of law, and the cross-motion for summary judgment is denied in its entirety.

### d. As to Whether a Judgment of Foreclosure and Sale is Warranted

The Homeowners contend that, even if summary judgment is awarded in favor of the Bank, it would be improper to render a judgment of foreclosure and sale at this juncture. In particular, they argue that "a referee first has to be appointed to determine the amounts owed on the mortgage when summary judgment is awarded in its favor, and then Plaintiff must file a motion seeking a Judgment of Foreclosure and Sale based upon such determined amounts." See Homeowners' Reply Br. at 16.

For this proposition, the Homeowners rely on the case of Andrews v. Citimortgage, Inc., No. 14-cv-1534, 2015 U.S. Dist. LEXIS 43027, at *3 n.4 (E.D.N.Y. Mar. 31, 2015), which states that "[a] motion for the appointment of a referee to compute the amount due on a mortgage is 'a preliminary step towards obtaining a judgment of foreclosure'" (quoting Home Sav. Of Am., F.A. v. Gkanios, 230 A.D.2d 770, 771, 646 N.Y.S.2d 530, 531 (2d Dep't 1996)). The Court finds this argument to be unpersuasive.

Initially, the Court finds that the Homeowners' interpretation of the relevant statute is incorrect. RPAPL § 1321 states, in relevant part, that:

> <u>If</u> the defendant fails to answer within the time allowed or <u>the right of the plaintiff is admitted by the answer</u>, upon motion of the plaintiff, <u>the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff</u> and to such of the defendants as are prior incumbrancers of the mortgaged premises, and to examine and report whether the mortgaged premises can be sold in parcels and, if the whole amount secured by the mortgage has not become due, to report the amount thereafter to become due.

RPAPL § 1321(1) (emphasis supplied).

Thus, contrary to the Homeowners' contention, the plain language of the statute makes clear that where, as here, summary judgment is appropriate, the Court is not required to appoint a referee to compute the amounts owned – it may perform that function itself. Accordingly, there appears to be no legal basis for denying the Bank's request for a judgment of foreclosure and sale at this juncture.

Having found that a judgment of foreclosure and sale is warranted, the Court turns to the amounts due to the Bank under the Mortgage. In this regard, the Bank has submitted a proposed judgment of foreclosure and sale, in which it has calculated the total amount due to be $722,755.76, comprised of: (1) $717,780.76 due on the Note; (2) $1,475 in costs; and (3) $3,500 in attorneys' fees. <u>See</u> Nov. 23, 2015 Affirmation of Regularity by John J. Ricciardi, Esq ("Ricciardi Aff."), DE [33-13], at Ex. "M"; <u>see also</u> Nov. 23, 2015 Sworn Statement of Damages by John J. Ricciardi, Esq., DE [33-12].

Aside from summarily contending that the Bank is not entitled to a judgment of foreclosure and sale at this juncture, the Homeowners failed to contest – or even address – the contents of the Bank's proposed judgment of foreclosure and sale; the Bank's calculation of its damages; or the underlying documentary evidence in any material way.

This despite the fact that they were duly served with: (1) the complaint, which specifically seeks a judgment of foreclosure and sale, and appointment of a referee to sell the Oceanside Residence; (2) the Bank's proposed judgment of foreclosure and sale, with all relevant calculations included; (3) the supporting affidavit of Caryn Edwards and the documentary evidence upon which it is based; and (4) the other documentary evidence, including the Statement of Damages and the attorney affirmation outlining the legal fees sought to be recovered, which were offered in support of the Bank's calculation of damages.

In this regard, despite advancing extensive argument on a variety of other topics, the Homeowners failed to contest any of the Bank's calculations of the amounts presently due under the Note and Mortgage. Consequently, the Homeowners have failed to raise any issue of material fact in this regard, and the Court finds that a judgment of foreclosure and sale is warranted as a matter of law.

Within 30 days of the date of this Order, the Bank is directed to submit an updated judgment on notice for the Court's review and signature, together with an affirmation identifying the relevant provisions of the Note and Mortgage, or other source of authority, entitling the Bank to such damages, and any additional receipts or proof of the amounts due, which may not have otherwise been included with the instant motion papers.

The Homeowners shall have 14 days after receiving such notice to raise particularized objections to the Bank's proposed judgment, together with any of its own supporting evidence to disprove the Bank's calculation of the amounts due.

**B.      The Bank's Motion for a Default Judgment Against Citibank**

As noted above, the Bank also moves under Fed. R. Civ. P. 55 for entry of a default judgment against Citibank, who has neither responded to this motion nor otherwise appeared in this action.

"Courts regularly enter default judgment in foreclosure actions against defendants with 'nominal interests' in the relevant property, such as parties holding liens that are subordinate to the plaintiff's interest."  Nationstar Mort. LLC v. Garcia, No. 15-cv-1854, 2015 U.S. Dist. LEXIS 176801, at *8-*9 (E.D.N.Y. Oct. 19, 2015) (Report and Recommendation), adopted, 2016 U.S. Dist. LEXIS 30307 (E.D.N.Y. Mar. 9, 2016) (Spatt, J.) (citations omitted).  "When a default judgment is entered against a defendant with a 'nominal interest' in a property, that defendant's interest in the relevant property is terminated."  Id. at *9 (citing Bright, 2012 U.S. Dist. LEXIS 93082, at *3-*4, and Bank of Am., N.A. v. 3301 Atl. Ave. LLC, No. 10-cv-2504, 2012 U.S. Dist. LEXIS 90928, at *47-*48 (E.D.N.Y. June 29, 2012)).

In this case, the Plaintiff alleges that Citibank "is the holder of a lien encumbering the [Oceanside Residence], which is subject and subordinate to Plaintiff's mortgage." Compl. ¶ 5.  Accordingly, by this action, the Plaintiff seeks to have Citibank's interest "foreclosed and [its] title, right, claim, lien, interest or equity of redemption to the property be forever extinguished."  Id. at *Ad Damnum Clause* ¶ (c).

The record reveals that Citibank was properly served with the summons and complaint on October 20, 2014, but failed to answer or otherwise respond.  See Aff. of Service, DE [6].  As stated above, the Clerk of the Court noted Citibank's default on February 12, 2015.  See DE [14].  On November 25, 2015, Citibank was served with copies of the

instant motion for entry of a default judgment.  <u>See</u> Aff. of Service, DE [36].  However, to date, Citibank has neither responded to the Bank's motion nor otherwise appeared in this action.

Under Fed. R. Civ. P. 55(b), following the Clerk's issuance of a default notice, the district court has discretion to enter a default judgment against a non-appearing party.  In that regard, the Second Circuit has provided three guiding factors to be considered in determining whether such relief is warranted: (1) whether the default was willful; (2) whether the Defendant has a meritorious defense; and (3) whether the Plaintiff will suffer prejudice if the motion for a default judgment is denied.  <u>See</u> <u>United States CFTC v. McCrudden</u>, No. 10-cv-5567, 2015 U.S. Dist. LEXIS 139257, at *3-*4 (E.D.N.Y. Oct. 13, 2015) (citing <u>Mason Tenders Dist. Council v. Duce Const. Corp.</u>, No. 02-cv-9044, 2003 U.S. Dist. LEXIS 6881, at *5 (S.D.N.Y. Apr. 28, 2003)).

Applying this standard, the Court finds that a default judgment should be entered against Citibank.  First, in this District, " '[w]hen a defendant is continually and entirely unresponsive,' [the] defendant's failure to respond is considered willful." <u>Fed. Ins. Co. v. CAC of NY, Inc.</u>, No. 14-cv-4132, 2015 U.S. Dist. LEXIS 32098, at *13 (E.D.N.Y. Feb. 5, 2015) (Report and Recommendation), <u>adopted</u>, 2015 U.S. Dist. LEXIS 31923 (E.D.N.Y. Mar. 16, 2015) (quoting <u>Ferrara v. PFJ Trucking, LLC</u>, No. 13-cv-7191, 2014 U.S. Dist. LEXIS 134095, at *12 (E.D.N.Y. Aug. 14, 2014) (Report and Recommendation), <u>adopted</u>, 2014 U.S. Dist. LEXIS 133723 (E.D.N.Y. Sept. 22, 2014)).  Thus, in the Court's view, Citibank's total failure to participate in this action, despite receiving ample notice, is considered willful.

Second, due to Citibank's non-appearance, the Court is unable to determine whether it has a meritorious defense to any of the Bank's allegations.

Third, the Court finds that denying the motion for a default judgment would prejudice the Bank in this case "because there is no other method by which it can obtain relief from the Court." Fed. Ins. Co., 2015 U.S. Dist. LEXIS 32098, at \*14-\*15 (citing Trustees v. JREM Const. Corp., No. 12-cv-3877, 2013 U.S. Dist. LEXIS 23962, at \*12 (E.D.N.Y. Jan. 19, 2013) (Report and Recommendation) (holding that the plaintiff would be prejudiced by a denial of the motion for a default judgment because "there [were] no additional steps available to secure relief in this Court"), adopted, 2013 U.S. Dist. LEXIS 22321 (E.D.N.Y. Feb. 12, 2013)).

Accordingly, the Court grants the Plaintiff's motion pursuant to Fed. R. Civ. P. 55 for the entry of a default judgment against the Defendant Citibank, NA.

## C.  The Homeowners' Motion for Sanctions Against the Bank under CPLR § 3408

Finally, the Homeowners move under the provisions of CPLR § 3408 for unspecified sanctions against the Bank on the ground that the Bank failed to negotiate a loan modification with them in good faith. Alternatively, they seek an order requiring the Bank to engage in further settlement negotiations.

In relevant part, CPLR § 3408 provides that, "the court shall hold a mandatory conference within sixty days after the date when proof of service is filed with the county clerk, or such adjourned date as has been agreed to by the parties" in any residential foreclosure action involving a home loan. See CPLR § 3408(a). The statute further provides that, at this mandatory conference, "[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible." Id. § 3408(f). However, "[u]nder New York law, a borrower has no entitlement to a permanent mortgage loan modification." Miller v. HSBC Bank USA, N.A.,

No. 13-cv-7500, 2015 U.S. Dist. LEXIS 16736, at *4 (S.D.N.Y. Feb. 11, 2015) (citation omitted),

The Homeowners argue, based solely on John O'Sullivan's affidavit, that the Bank has failed to negotiate a loan modification in good faith because, in 2010, during a trial modification period, an unidentified representative of IndyMac named Donna incorrectly advised the Homeowners that they had been denied a permanent modification and needed not make the third and final trial modification payment. Then, according to the Homeowners, the Bank improperly relied on their failure to complete the prior trial modification as a basis for refusing to modify the loan at a later date. This argument is without merit.

Initially, "[c]ourts in this Circuit have held that, in this context, Rule 16 provides a sufficient alternative mechanism for facilitating settlement, rendering CPLR § 3408's mandatory settlement conference requirement inapplicable." E. Sav. Bank, FSB v. Aufiero, No. 14-cv-0256, 2016 U.S. Dist. LEXIS 32470, at *26 (E.D.N.Y. Mar. 14, 2016) (citing Kondaur Capital Corp. v. Cajuste, 849 F. Supp. 2d 363, 370 (E.D.N.Y. 2012) (holding that "Rule 16 is sufficiently broad to cover the issue of holding a conference for the purpose of facilitating settlement")). Thus, the Homeowners have failed to articulate a viable basis for relief because the statutory rule they seek to invoke is generally inapplicable in federal court.

Further, even if this state procedural rule were applied, it would not provide a source of relief for the Homeowners because its requirement to act in good faith relates narrowly to the parties' conduct *at the mandatory settlement conference* – in the Court's view, it does not create a broader right of action for sanctions based on allegations that a

lender has generally failed to act in good faith throughout the course of the lending relationship.

In any event, the Court finds that CPLR § 3408 was clearly satisfied in this case by the multiple rounds of pre-trial settlement negotiations conducted at the direction of United States Magistrate Judges Locke and Shields. See Aufiero, 2016 U.S. Dist. LEXIS 32470, at *26 ("[T]he parties have already engaged in settlement discussions on multiple previous occasions to no avail, and the Court notes not believe a further mandated conference would have a meaningful impact on the parties' ability to reach a settlement agreement"). There is no indication that, over the course of several months and multiple conferences, the Homeowners ever brought their allegations of bad faith negotiations to the attention of the assigned Magistrates, or sought to resolve that issue prior to engaging in dispositive motion practice.

In fact, even now, as the Homeowners raise this issue for the first time at the summary judgment stage, there is no evidence of any bad faith in the record, other than John's unsupported assertions that, on an unspecified date approximately six years ago, an unidentified agent of IndyMac named Donna falsely advised him not to make the final payment on the Homeowners' trial modification – advice be admittedly took. However, these bare hearsay assertions, unsupported by any admissible evidence, are plainly insufficient to warrant the relief sought. In this regard, the Court rejects the Homeowners' contention that the Bank has unjustifiably withheld relevant evidence from them, including an audio recording of the phone call with Donna, as there is no indication that they made any motion during more than a year of discovery to compel the production of such evidence.

Further, despite conclusorily stating that he and Filomena "have been trying to modify the Subject Loan with the plaintiff since 2008," there is no evidence of any specific efforts to do so, other than a notice from the Bank – which is dated approximately seven months after this action was commenced and approximately *eight years* after the Homeowners first defaulted on their mortgage – advising them that, after multiple reviews, their loan remained ineligible for a permanent modification. There is no evidence that the Homeowners made, or were prevented by the Bank from making any other attempts throughout this time to cure their default. Thus, under the facts and circumstances of this case, the Court discerns no rational basis for awarding the Homeowners relief under CPLR § 3408.

Accordingly, the Court denies the Homeowners' motion for sanctions under CPLR § 3408 in all respects.

### III. Conclusion

Based on the foregoing, the Court grants summary judgment in favor of the Plaintiff CIT Bank, N.A. and dismisses with prejudice the affirmative defenses and counterclaim of the Defendants John O'Sullivan and Filomena O'Sullivan.

Further, the Court grants the Bank's motion for a default judgment against Citibank.

Finally, the Court denies the cross-motion by the Homeowners for summary judgment in their favor, and also denies the Homeowners' motion for sanctions against the Bank in its entirety.

Within 30 days of the date of this Order, the Bank shall submit, on notice, a proposed judgment of foreclosure and sale consistent with this opinion.

It is **SO ORDERED.**

Dated:        Central Islip, New York
               May 10, 2016

                                        */s/ Arthur D. Spatt*               
                                          ARTHUR D. SPATT
                                          United States District Judge